The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Peter C. Kavanaugh presiding. Thank you. We'll next call 4-23-0656, People of the State of Illinois v. Michael Bakana. Counsel for the appellant, would you please state your name for the record? Good morning, your honors. I'm Darrell Lohman, the attorney for the appellant Michael Bakana. And counsel for the appellee? Richard London on behalf of the people of the State of Illinois. Very well, Mr. Oman, you may proceed. Thank you, your honor. Good morning again, your honors. And may it please the court, again, for the record, I'm Darrell Lohman, the attorney for the appellant in this case, Michael Bakana. I've raised two issues in my briefs, but today I plan to spend the bulk of my time on the second issue, which is that the trial court erred when it refused to issue the jury on second degree murder, even though it had already determined that the evidence was sufficient to submit a self-defense instruction. As a Supreme Court held in People v. Washington, when self-defense instructions are issued, second degree murder instructions requested by the defense also are absolutely mandatory. And this was presented to the trial court, and the trial court simply refused to issue them. Counsel, with respect to your argument, good morning. With respect to your argument in this jury instruction space, is there any part of your argument or how the, I'm sorry, is there any part of the argument or how the trial court erred that applies to or encompasses the attempted murder charge and conviction? Or is it only with respect to the first degree murder charge and conviction? Thank you, Your Honor, for allowing me to clarify. Yes, the only instructions that issue in this particular argument are second degree murder instructions, which don't apply to the attempt charge. So this applies to his conviction of first degree murder, which for a finding of second degree murder would necessarily under Illinois law encompass all the elements of first degree murder, but not attempted first degree murder. Does that answer your question? Yes, but then let me jump to something that opposing counsel mentions in his brief. And that is, if we were to find that there was error, that we should send the matter back only with respect to the first degree murder conviction. Do you agree? Again, with respect to the second argument regarding the second degree murder instruction, I do agree. However, with respect to the first argument, just as a point of clarity, that applies to both of the charges. And therefore, if this court agrees with my first argument regarding the notice provision, it should be remanded for a new trial with respect to all charges and everything would need to be vacated. All right. And when you say the first argument, you're talking about the trial and absentia warnings. Is that correct? Okay. Thank you for the clarification. So but returning now to the second argument, the actual substance of that case, Washington held that where self defense instructions are issued, second degree murder instructions also must be issued because now the issue of whether the self defense was reasonable or unreasonable must be left to the jury, which makes sense in a case like this one, where the defendant clearly has an actual belief that he was defending himself. The question becomes whether that was reasonable or unreasonable, which is a fact question for a jury and a jury case by refusing to issue the instruction. The judge improperly removed that from the purview of the jury and decided it himself. If the belief was reasonable, then the defendants found that guilty. But if the belief is unreasonable under the way the secondary murder statute works, then the defendant is guilty of second degree murder, which apparently under the facts of this case, the jury found unreasonable self defense. However, because the judge refused to instruct them on secondary murder, they were prevented having not been instructed to find that he was guilty of only second degree murder and not first degree murder. That's the error in this case. Remarkably, the second argument is not doesn't really contest this point in its brief. In the brief, the state concedes, quote, the trial judge here was wrong to find that the defendant was required to personally request secondary murder instructions, which is on its brief on page 19. That was the sole basis that the court provided for refusing this instruction had been presented with the law and was aware that the secondary murder instruction was mandatory if self defense was provided. The only reason provided by the court why the instruction wasn't issued was because the state has argued for the additional reason, in addition to what I've said in my brief, that the defendant was not even required to personally provide that because secondary murder instruction is a lesser mitigated offense and not a decision for the defendant to make personally. And we agree that this court should accept that concession. In addition to everything that's in our briefs about people versus Washington, the central issue in this case, self defense instructions are granted second degree is required. What the court did in this case is completely unprecedented. None of these cases say anything about this kind of jury instruction issued the case on point is people versus Washington. So counsel, if I can just follow up on something you indicated with respect to the state's argument, agreed, the state does seem to concede that the trial court did air and refusing to give the secondary murder instruction, since counsel does have the authority and ability to request it on behalf of the defendant, which wasn't recognized by the trial court. But the state goes further and argues that this error really was harmless because the defendant wasn't entitled to the self defense instruction in the first place. So how do you respond to that? What do you make of this? Well, I have two responses to that. First of all, the self defense instruction was granted, and the state cannot appeal that determination. That is not one of the categories of appeals that a state can make in a criminal case. As this court well knows, a criminal defendant has wide authority to raise a number of errors that occurred throughout his criminal proceeding. The state is specifically restricted by the Illinois Supreme Court rules to specific sorts of arguments where it could say that the trial court made an error. This is not one of those. But second, the record in this case is replete with evidence that Mr. Bikana subjectively believed that he was acting in self defense. The circumstances of the surveillance video where he's not the aggressor, he has his phone slapped out of his hand and shoved into a wall. His statements even at the scene by third parties, just onlookers who testified at trial saying he was completely shook and remorseful and couldn't believe and hope that the women survived what happened to him. But he's a small man, 140 pounds, he'd been attacked three times, twice only by women. The last time he was hospitalized, he very clearly based on the interrogation video, the testimony of third parties who were present, the police officers who testified to his initial reaction, not even under questioning, just his reaction in the car being transported to the police station. The video of the interrogation room, not when he's being questioned, just when he's in the room on his own, having a nervous breakdown because he felt compelled to defend himself. That certainly meets the low threshold for whether a jury instruction should be issued, which in the brief, I say people versus hurry. But there's a number of Supreme Court cases that talk about the standard being low, minimal evidence, even very, very minimal evidence, because the Sixth Amendment provides a defendant with the right to a trial by jury. It's a factual question. So if the facts of the case are present, it's for the jury to decide which way or another. It's not for the trial court to decide. It's not for this court to decide. It's not a sufficiency argument. I'm not saying that the jury was wrong and this court should reverse that. I'm saying the jury was never told that it can make a determination whether his actual belief, which he clearly had, was reasonable or unreasonable, because the judge took that away from them. So should this court actually look at whether or not the self-defense instruction should have been given? Or are you saying that that, in essence, amounted to a cross-appeal by the state, which is not permitted? I'm saying, first, that it is a impermitted cross-appeal, and I think I argue that in the reply brief. But second, even if this court's inclined to look at it under a harmless error analysis or something else, the case law where there's a self-defense instruction and a secondary murder instruction is always found to not be harmless error, again, because the evidence is the same. So where we have evidence in this case where he subjectively believed he was defending himself, which I believe is overwhelming, that's not the standard. It only has to be slight or even very slight evidence that he subjectively believed that. That creates a question for the jury to decide whether that subjective belief was reasonable or unreasonable, and that's what the Illinois Supreme Court held in People v. Washington. Where there's a self-defense instruction, that means there's enough evidence of, quote, an actual belief in the need to use force and self-defense. And from that evidence, the jury finds that if the jury defines that the defendant had that subjective belief, it should determine whether it's objectively reasonable or objectively unreasonable. That was his right under the way Illinois murder statutes are structured. And under the Sixth Amendment, his right to trial by jury, that was taken away from him when the court refused to issue the second-degree murder instruction. So did counsel for the defendant actually ask and request this instruction at any point, the second-degree murder instruction? And if so, when? Yes, Your Honor. It was requested at every point. It was requested pre-trial and discovery because there was notification from the defenses of self-defense. And he went above and beyond and said, in the answer to discovery, we intend to seek a second-degree murder instruction. Then at the jury instructions conference, it again was requested, and this is block quoted in both my brief and in the state's brief, a very short discussion where the parties, after the self-defense instruction, say, now you have to issue the second-degree murder instruction. The judge disagrees and said, he's not here to ask for it, so I'm not going to give it. And then finally, for a third time, it's required for issue of reservation under Illinois law. It's raised again in the post-trial motion where the defense attorney says that the judge erred in refusing to issue the second-degree murder instruction. So with respect to the first place you mentioned, that is with regard to the discovery, wasn't the, how it was presented, wasn't that tentative that, in other words, we might ask for it, or it might be requested, or it might, this might be an affirmative defense? I mean, we wouldn't know that with the discovery for sure until we get to the trial, right? Well, the purpose of the discovery is to notify the state that this could be a defense, so it could prepare its case. So- So it's tentative. Yes, it's tentative. It's not binding on the defense. The defense certainly could change its mind. There's no basis in a case like this to change its mind. Again, everything's recorded on video. There's a custodial statement. The facts, for the most part, are not in dispute. This comes down to a question of whether what he did was reasonable or unreasonable, and that was a fact question that the jury was never given a result. The defense attorney was always going to request a second-degree murder instruction, and that's evident by his response during the instructions conference when, frankly, both sides are surprised when the judge refuses to issue the instruction. And he explains, this is a self-defense case. I need my client to come in and testify. And then, obviously, you have a shooting of two unarmed people. It's totally plausible the jury would do what they did in this case and say, well, yeah, but that's not reasonable. Therefore, we've shown all the elements of first-degree murder and not justification under self-defense. But there's a third way, the third way which was always going to be the central argument in a case like this, which is that, yes, he may have gone too far, but that's not first-degree murder, that's second-degree murder. Thank you. The state's brief, for the most part, focuses on whether this was somehow procedurally defaulted. As Your Honor points out, they essentially concede the substantive point at issue in this case. But as I just pointed out, it was clearly preserved in the court below through everything that's required under People v. Enoch and dozens or hundreds of other cases that talk about preservation of appellate issues. It was raised at the Instructions Conference, and it was renewed in the motion for the trial. And to the extent the state claims invoided error, this is the exact opposite of an invoided error jury instruction case, the most famous and recent of which is probably People v. Patrick. And in that case, the defendant himself proposed the instruction and then attempted to argue on appeal that the instruction that he himself tendered was incorrect. That makes sense that that would be invited error. You can't cause the court to make an error and then on appeal say, oh, that was an error you should reverse. Got you. That's not what's happening in this case. This case is the opposite of that. In this case, everyone's asking for the secondary murder instruction, and the judge is refusing to issue it. It's not invited error. The trial attorney did everything proper that he could have done, and the state, frankly, doesn't really explain what else he should have done. Additionally, they seem to argue that I didn't argue it enough in my brief, which, again, is, frankly, very, very difficult for me to understand because, as this court well knows, framing an argument is determined by Illinois Supreme Court Rule 341-H7, which explains what you have to put in an argument, and all of those things are here. I set forth the argument that, again, the argument is under Washington. The murder instruction that was requested by defense counsel. I set that forth as a separate Roman numeral argument heading. I compliant with Supreme Court rules, stated the contentions of the appellant and the reasons therefore. I provided citation of the authorities in the pages of the record relied upon. That's all that needs to be done to raise an issue in this court. There's no basis for procedural default. This is, frankly, a completely ordinary trial error case that this court deals with on direct appeal routinely, and the argument that this is procedurally forfeited, I feel, is completely out of bounds. Counsel, I do have a question with regard to the first issue, the trial on absentia warning issue, and that is, in your reply brief, you urged this court to follow Ramirez, a more recent Supreme Court case. Why is Ramirez instructive to this court if the facts there are distinguishable? There, the defendant was not in court, at least as I read it, when the first trial date was set, and that's not the case here. The defendant definitely was in court when the trial date was set, and we know procedurally what happened. He failed to appear. His counsel asked for some additional time, so why is Ramirez instructive to this court? Well, Ramirez is a high court case. It's not restricted to just the facts of that case. The court was not... I'm sorry, I missed the first thing. Ramirez is a... I missed that word. I'm sorry. So the reason that the Illinois Supreme Court randomly to appeal on Ramirez is there was a split in authority between the different districts that it was resolving a larger legal question about whether strict compliance is required for the statute. Some districts said it wasn't. Some said it was. This court, in fact, was kind of on both sides of the fence in the Watson decision and insisted on strict compliance, and then in a later decision insisted that, as your Honor suggests, there was perhaps some wiggle room. What Ramirez actually stands for is the proposition that strict compliance is required. It came down against the state on the side of the defense, looked at the terms of the statute as it's done in countless other contexts, looking at mandatory language versus permissive language, and it was made very clear under the language of the statute using language such as the clerk shall issue... Sorry, shall send to the defendant by certified mail, and that such notification shall be required, and the court was doing that, obviously, mandatory. It was mandatory that strict compliance was required. Further, the bright line rule is the minimal burden on trial courts to say this is what you have to do. Again, we see this in many other contexts. It's a procedural due process requirement. There has to be something. This is extremely minimal. The least you can do, perhaps the only thing less than a certified mailing is publishing it in a newspaper, and as this court knows, there's countless notice statutes providing this sort of extremely minimal procedural due process. This is one of them. This is what the Illinois legislature decided what was appropriate. Okay, so how do you respond to the state's argument that what the trial court did here by delaying the start of the trial was really not resetting the trial date, but a mere continuance so that notice really wasn't required? I have two responses to that as well. First, one of the facts of this case, that's not what happened. The trial date was set for Monday. The trial did not begin on Monday. The case was continued. It was never begun. This is a jury trial. There was no jury selection. The venereal was not brought into the room, but again, putting that aside, let's assume for the sake of argument that state is correct, that at Monday, despite nothing happening on a trial procedure, on Monday, the trial somehow was commenced. Under the terms of the statute, this still would have been improper. The court would have been required to wait two days for the defendant to be absent from court before it can proceed. Again, under section 151-4.1A, which is the statute that we're talking about in this issue, it says, quote, if the trial had previously commenced, which is what Hunter asked and what the state has argued, and the defendant willfully absences himself for two consecutive court days, the court shall proceed. Again, we're going to assume that the trial commenced on Monday, even though nothing happened, and he was absent on Monday. The court could not, as it did in this case, start the trial on Tuesday. It would have had to wait until Wednesday under the express terms of the statute. Then going back to Ramirez, Ramirez says the legislature has to decide this. You can't read exceptions into a very clear mandatory statute. Had the legislature intended to have an exception and maybe only wait one day, it would say one day, but it doesn't. It says two consecutive court days. And again, if the court doesn't accept the state's argument, which I feel it shouldn't, because there was a new court date, it was moved to a completely different date, then just issue the certified mail. It's a really minimal burden, the trial attorney for Mr. McConaughey made that very clear. Let's dot our I's, let's cross our T's. There's literally no reason not to do this. Again, the jury had not been selected yet. This is not the middle of trial. It's not a big deal to just put it off, send the notice required by the Illinois legislature, required by the Illinois Supreme Court, and then commence the trial on the new trial date that was set. And returning back briefly to the second issue, this issue has been fully briefed in this court. It's a normal direct appeal, as I pointed out, issue, sorry, a normal direct appeal issue, as I pointed out earlier. However, the state actually argues in its brief that Mr. McConaughey should file a post-conviction petition, because again, they concede the substantive issue. They're not saying he's not entitled to relief. They're actually arguing he's not entitled to relief. Now, I disagree. This is a normal issue. It's fully briefed. It's properly raised before this court. The record is sufficient. There's no reason for this case to go back down to the trial court. The filing of post-conviction petition, the appointment of a new attorney, not a waste, complete waste of judicial resources to do that. And for that reason, the time to remand for a new trial with proper instructions is now. Thank you. Any questions? Mr. London. Good morning, your honors, counsel. May it please the court, Richard London on behalf of the people of the state of Illinois. Your honor, I briefly first turn to the first issue. This is not a minor procedure. This court in house found that such notification, which the people agree is required under the statute, shall be required when the defendant was not personally present in open court at the time the case was set for trial. That's not the case here. Factually. How would he know when the trial was to start? I mean, yes, he didn't show up, but the case didn't start on that date. It didn't start until a different date. How was he to know if he didn't get notice? That's the same circumstance in house. It's the same circumstance in Belasco. If we were to accept that analysis, a defendant could delay a trial indeterminately by not showing up. Appear in court the next day, it's reset, not show up again. Here, factually, the fact is the court was well aware, the trial court judge discussed when he set and determined that defendant retried an abstentious set. In my 16 years, I've never done this. I'm doing it here in this case because one, defendant was properly noticed, defendant was present, defendant was present at least three times when his in absentia, he was advised of the concept of in absentia. He has asked for 16 statuses, all in defendant's motion. The case has been previously set six separate times, at least one time where defendant asked for continuance on the eve of trial and changed attorneys. If the question is, how would he know? The answer is, how would any defendant ever know? How could we ever have a trial in absentia if the requirement is that if defendant doesn't appear in court, that he automatically gets this requirement? That's not what this court said in House, that's not what the court said in Velasco. We distinguish Ramirez, we distinguish Watson. In each of those cases, defendant simply wasn't present. You'll forgive me, I might be confusing, I believe it was Watson. In one of the cases, which would be a better question, defendant was not present in court because his attorney came in and said, I told him, even though he was made aware that it was going to be heard on the 19th of that month, I told him it wasn't going to be going forward. His attorney affirmatively told him he didn't need to appear and that he should call in and the attorney would advise him. That's not the case here. At all points in time, defendant knew. If we were to suggest that defendant could avoid an in absentia simply by not appearing and then notice, what's to have stopped in this case a defendant who clearly was trying to delay trial? What's to stop that if he did receive notice that the exact same thing wouldn't have occurred? It isn't as simple or easy as defendant is suggesting. The record also reflects that contrary to the suggestion, he was pretty easy to be found. He was present for his sentencing hearing. He wasn't easily found. He was arrested out of state and brought in for a sentencing hearing, which was not a couple of days later. Counsel, I have one other question on the trial in absentia issue before we turn to the other second issue. You do argue in your trial brief that technically the trial date wasn't reset, but there was just a continuance. How do you distinguish what is a new trial setting and what's a continuance? For purposes of the statute here in Illinois regarding notice, what is the difference? Well, I think set is a term of art. Whether we call it a continuance, in this case, actually, the judge used the term continuance, which was that defendant's request, but the judge specifically said we're recessing until tomorrow. The only reason that there was any delay, however you want to call it, a recess, a continuance, it was because defendant didn't appear. We certainly would be having, I guarantee you from what I hear today, the defense would be arguing if trial did proceed and they picked a jury on the 8th, we would be arguing that they defended the opportunity to be found, that maybe he was sick or maybe there was an emergency. That's obviously pretty strongly rebutted by the fact that he cut off his monitor, didn't answer his phone, et cetera, et cetera. But again, I think that the answer is in bench trials, by analogy, in a bench trial where it is not uncommon for a case to be continued indeterminately. A judge might hear a case and then said, okay, it's a bench trial, I don't need the same continuity, we'll pick this up two weeks from now. Is that resetting the trial? Again, technically and by definition, it is not. It's a continuance at the agreement of the parties. Here was a delay, a continuance, a recess for one day at the request of defendant. It is, again, I believe disingenuous for defense attorney to have said, give me a day, give me some time to find my defendant, and then come in the next morning and say, I can't find him, let's now delay further and give him notice. I want to make sure I'm following. Your position is defendant has notice of a trial date, on the trial date doesn't appear, the court grants a request for a day, and then you say you had the language the court recessed for the evening to come back in the morning to see if the defendant appeared. Is all of that supported by the record? Yes. I can give you the exact reset language is record at 356, 355 through 357. Thank you. You're welcome. Mr. London, with respect to the second issue, since our time clock is moving, with respect to the harmless error argument that you make in your brief on the claim with respect to the self-defense instruction, how is that not a cross appeal, which is prohibited? A cross appeal is, of course, prohibited. We are not asking this court to remand for a new determination by the trial court judge. What we're saying is the error is harmless. Let me digress for just a moment to suggest that people do not concede that the defense has properly raised this issue or the issue is preserved. The only issue that is preserved is whether or not defendant personally requested a second degree instruction. We don't agree that the record supports that. Trial counsel never discussed Wilmington. The opening brief never discussed Wilmington. The trial judge was never presented with Wilmington. We, the people, suggested, wait a second, this isn't the correct analysis. The correct analysis is Wilmington, not Washington. What we say is that the trial court judge erred in its analysis, the analysis being that you need to analyze the determination of whether or not a second degree instruction under Wilmington, not Washington. Why does that matter? It matters because, contrary to the argument today, it is not definitive. It is not clear. This court does not have everything it needs. What doesn't it have? Your Honor, just as enough, we're asked, did defense counsel request an instruction? He did not. He did not do it at any point in time. The preliminary suggestion that we might be asking this is certainly not determinative. Both the people and the trial judge explain, wait a second, many circumstances when a trial proceeds, defense strategy changes. Defense counsel never said this was his strategy. Defense counsel merely said, it is my understanding, it is my belief that this is what my client wants. What we do need and what is not clear for the record, and we would need this to be raised at PC. We are not saying it's inconceivable, but at PC, we would need at least an affidavit, if not testimony from defense counsel, that I would have made this request. This would have been my strategy. Not that because I can't contact my client, I believe that this is possibly what he would have wanted. Also, defense counsel- Let me interrupt a sec. Wasn't that suggested, again, with respect to the discovery here? That was all set out in the discovery. That was part of the strategy and the plan. Well, again, there is a tentative suggestion. There possibly is a tentative plan. Depending on how the record plays out, depending on the evidence that is established, counsel may or may not decide to do that. There's also cases discussed in this area of second degree where the defendant does the exact opposite. Defendant questions, is counsel ineffective for raising the issue of second degree when he isn't explained or doesn't want it? The courts have said, well, that is because it's lesser mitigated, not lesser included. That is something for the attorney to decide. But no, it is not clear because it is a possible strategy that that was going to be counsel's strategy. It's speculative. It might well be the case, but the record does not clearly establish that. There is nothing here that establishes that that potential remedy is something that counsel would have requested. That's why it is not just acquiescence. And we say that, again, it's forfeited for two reasons. It's forfeited in general, but it's also specifically because counsel acquiesced in the, again, admittedly, and this is not something typically the people do, but we did not only acknowledge error, we raised it. We raised Wilmington. We've suggested that Wilmington should have been the proper analysis, not merely Washington. But neither trial counsel nor appellate counsel discussed Wilmington. It is not sufficient to say we raised the issue of the second degree murder instruction. And because the people have, you know, agreed that there was We don't agree that there was necessarily error in not giving the instruction. We agree that there was error in the analysis of whether or not it was given in this particular case. The counsel merely argued that defendant needed to be there to give a self-defense. Counsel didn't present an instruction for second degree. Counsel didn't specifically request a second degree. Counsel never said he would have requested second degree. Counsel did say we agree completely. The record is clear that defendant would have wanted to request this. We've discussed it. Well, as the trial judge clearly established, as the people argued below, and we knew that argument, because that was the strategy prior to trial doesn't mean it would have been the strategy after trial. The fact that defendant is saying, well, that's, you know, the best because here, and I do have to take issue with the suggestion that the jury found that there was, would have supported a second degree instruction, that the jury's decision suggested that there was a lesser mitigation. The jury's decision simply said we are not finding self-defense. We agree that because the jury was not presented with second degree, we have no clue whether or not the jury would have suggested. Going back now to the question of is harmless error analysis appropriate? Yes, because we are not asking this court to, for a cross appeal. We're saying is if the discernment that there was a properly a self-defense argument is inaccurate, then defendant was not entitled to a second degree. I would vehemently, and the people would vehemently disagree that the evidence of self-defense was overwhelming. The trial judge said correctly, I am a gatekeeper. It is not my determination to decide whether or not defendant, you know, has a self-defense right. What I have to determine is does it even get to the jury? And he conducted a very careful analysis, which we go through in our brief. And the judge said it doesn't really appear to meet at least a number of the criteria. The main one being there was no concern. He didn't fear for his life subjectively or objectively. And more importantly, he left the scene. He was the aggressor. The spitting in the face, there's no evidence of that. The hitting his head, there's no evidence of that. That was argued. I'm sorry, Your Honor. I just want to go back. You're referring now to the second degree instruction, or are you referring to the self-defense? The self-defense. However, isn't the standard any slight evidence? Yes. And we're suggesting that- How is this? Okay, go ahead then and continue explaining. There isn't even any slight, because to be any slight, you have to still meet all the six criteria. If the people could say there isn't, and the trial judge very carefully said, I'm really in a quandary here. I don't know that there's any evidence. Why? At the very least, when defendant left the scene and then returned, he became the aggressor. So I don't think there's any slight. However, basically, I'm bending over backwards and I'm going to give this to the jury. Well, that was within the trial judge's discretion, was it not? Correct. Correct. And we're suggesting that the judge abuses discretion, not across appeal, but again, in a harmless error analysis, this court can look at and say, well, that judge was wrong. Therefore, defendant isn't entitled to a second degree. But again, most importantly, the procedural error, the forfeiture can and should be applied because by not giving the trial judge an opportunity to correct his mistake. And again, we do concede the judge made the wrong analysis. Defense counsel acquiesced in that analysis. Appellate counsel has acquiesced in that analysis. What is the analysis? Wilmington versus Washington. You can't just say under Washington, because it was given, it doesn't matter who made that request. We feel that the record is clear and we argue that in our brief, that defendant did not make the request. He can't make the request. The judge correctly, if this was a lesser included, the judge would have correctly determined that defendant didn't personally request it. So just take a minute and take us through Wilmington and why that, what about Wilmington suggests that that should apply here? Because the court said in Wilmington that as a lesser mitigated defense, it is the trial counsel's ability to make that call. It is a trial strategy decision. So here, Wilmington applies. Under Wilmington, if, and again, the people would agree, if it is clear from the record that trial counsel said defendant personally wanted this, but in addition, I, trial counsel, am exercising my strategy. And I'm not saying it has to be those words, but if the record is clear that trial counsel was requesting it, then under Wilmington, the judge would have erred. But you also have to suggest that the trial judge was advised of, it's clear from the record that both the trial court and defense counsel believe we're not, may I continue? Please. Okay. That neither trial counsel nor the trial judge were familiar with Wilmington and Wilmington controls. So why does it have to go PC? Why does defendant, if on PC defense counsel says, I was not aware of Wilmington, therefore I was ineffective for not arguing Wilmington. And it would have been my trial strategy to request this instruction. Defendant almost certainly will receive his relief and probably will receive a new trial on the one conviction, obviously not the other. However, I'm sorry. I said, I thought you were finished. Thank you. Okay. Yeah. I was simply going to say, however, that is not clear. And that's why we need a PC. Thank you, counsel. Rubano. Yeah. May it please the court. I just have a few quick things I would like to correct about misstatements that the state just provided. First of all, the state opens with an argument that there would be no way to stop the defendant from delaying trial because he could just not show up. That just ignores the statute, had the notice actually been issued setting a new trial date and he didn't show up on that trial that the court could have simply begun trial on that date. And then secondly, there's the alternative scenario, which I mentioned earlier, which the state apparently has no response to at all that had the court commenced the case and he didn't show up on a date. The statute says he has to wait two successive court dates. And then on the third day, under the plain terms of the statute, the court could simply recommence the trial. The legislature thought all this through. It's all about the statute. I suggest this court, as the nearest court says, simply apply the plain terms of the statute. And as the court said in that case, quote, had the legislature intended such an exception, it easily could have included the statutory language because it didn't. This court should simply apply the new statute. Turning to the second contention, there are a few factual misstatements. The most egregious of which is the statement that Mr. McConnell left the scene. He immediately surrendered. This is a bang-bang instance. Also that he was, the state alleges that he was the aggressor. He did not lay a hand on either woman. He was reporting a woman who was admittedly testified at trial. She was blackout drunk. Third party witnesses testified. She called him the N-word, which if a person can't say that in court and I can't say it now, that's pretty egregious. And still he did not lay a hand on the person. One slapped the phone out of his hand and the other pushed him into the wall. He was not the aggressor. Second, the state repeatedly says that the attorney did not request a secondary murder instruction. I would submit the record speaks for itself. This is a block quoted in both of our briefs. This court could more than look at what's happening here and understand this is a criminal case. The state showed up with all of its IPI and it was for the murder. Third, and lastly, the state talks about how it found this Wilmington issue that's not the Washington issue. Well, importantly, what it doesn't do is disagree with the Washington issue. It doesn't disagree with the argument presented to this court that once the self-defense instruction was issued, the court was required to issue the secondary murder instruction. Nothing in its brief, nothing in its argument today said that that was okay. They have conceded that point by not arguing it. Now, it's true. They went out and they said to Wilmington too. They said, hey, your argument's 99% of it. We found another 1%. We found this first district case from 2017 that disagrees with the fourth district case. Okay. I mean, your honor should accept that as well. That's an additional reason why the court was wrong in its decision. There's no reason that the court was correct in its decision. Therefore, this court should find that it was a good case and reverse at this time for a new trial with proper instructions. You agree that the record needed to reflect that trial court himself requested the instruction, the second degree murder? No, your honor. Attorneys speak on behalf of the client, like I'm doing now. When he told the court they wanted the second degree instruction, he's speaking of himself and his client. And again, the context is clear. The facts of this case are clear. Dating all the way back to discovery, this was always going to be fully defense. It was only a chance, not at vindication, not at acquittal, but recognizing under Illinois law that there was unreasonable self-defense here. And because the trial judge ignored Washington, which the state doesn't disagree that that's the law, and refused to instruction, he was denied that jury determination. Thank you. All right. Thank you, counsel. Thank you all. Thank you for your advisement and now stand in recess.